NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICARDO CEPATES,<br><br>         Petitioner,<br><br>v.<br><br>STEPHEN D'ILIO and THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY,<br><br>         Respondents. | Case No. 14cv7649 (EP)<br><br>**OPINION** |

**PADIN, District Judge.**

*Pro se* Petitioner Ricardo Cepates, a prisoner at New Jersey State Prison ("NJSP"), seeks a writ of habeas corpus under 28 U.S.C. § 2254 vacating his state court conviction. D.E. 3 ("Am. Pet."). Respondents Stephen D'Ilio (NJSP's Administrator) and the New Jersey Attorney General oppose the petition. D.E. 8 ("Opp'n").

For the following reasons, the Court will **DISMISS** Ground One and Ground Two's ineffective assistance of appellate counsel claim as **PROCEDURALLY DEFAULTED**. The Court will **DENY** relief under Section 2254 for Ground Two's ineffective assistance of trial counsel claim and will **DENY** a certificate of appealability.

**I. BACKGROUND[1]**

"[B]etween 2001-2003, six women were raped in New Brunswick." *State v. Cepates*, 2014 WL 1125044, at *1 (N.J. Super. Ct. App. Div. Mar. 24, 2014) ("*Cepates II*"). In four incidents

---

[1] The Court defers to the state courts' factual determinations pursuant to 28 U.S.C. § 2254(e)(1) and adopts the facts as set forth by the New Jersey Superior Court Appellate Division ("Appellate Division") in its direct appeal and collateral review opinions.

involving five women,[2] "the assailant confronted [and kidnapped] the victims on a public street . . . ." *Id.* He then "took them to a secluded spot, [] threatened them with a weapon or other physical harm[,] . . . [and] sexually assaulted them." *Id.* "In a fifth case, he entered the victim's home by force, threatened her and her children, and sexually assaulted her." *Id.* A DNA analysis linked Cepates to the sexual assaults in December 2003. *Id.* On April 6, 2004, a Middlesex County grand jury returned Indictment No. 04-04-00465, which alleged forty-seven counts against Cepates:

> First-degree kidnapping, N.J.S.A. 2C:13–1(b) (counts one, seventeen, twenty, twenty-five, thirty-four, and forty)
>
> First-degree aggravated sexual assault, N.J.S.A. 2C:14–2(a) (counts two, three, nine, twenty-one, twenty-two, twenty-six, twenty-seven, thirty-five, thirty-six, and forty-one)
>
> Second-degree sexual assault, N.J.S.A. 2C:14–2(c) (counts four, ten, twenty-three, twenty-eight, thirty-seven, and forty-two)
>
> First-degree robbery, N.J.S.A. 2C:15–1 (counts five, eighteen, twenty-four, twenty-nine, thirty-two, and thirty-eight)
>
> Third-degree terroristic threats, N.J.S.A. 2C:12–3(b) (counts six, twelve, forty-three, and forty-seven)
>
> Third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (counts seven, thirteen, thirty-one, thirty-three, thirty-nine, forty-four, forty-six)
>
> Second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count eight)
>
> Second-degree burglary, N.J.S.A. 2C:18-2 (count eleven)
>
> Third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (counts fourteen and nineteen)
>
> Third-degree endangering the welfare of a child, N.J.S.A. 2C:24–4(a) (counts fifteen, sixteen, and thirty)

---

[2] One incident involved two victims: a woman and her teenage daughter.

2

> Second-degree attempted aggravated sexual assault, N.J.S.A 2C:5-1, 14-2(a) (count forty-five).

See D.E. 8-2 at 1-12.[3]

### A. Pre-trial and Trial Proceedings

Cepates moved for relief from alleged prejudicial joinder in June 2004. 3T.[4] "[T]he State conceded that counts seventeen through nineteen . . . [and] counts thirty-two and thirty-three . . . should be severed."[5] D.E. 8-7 ("State App. Br.") at 11. The trial court concluded that counts one through eight, twenty through thirty-one, thirty-four though thirty-nine, and forty through forty-four should be tried together. 3T10:5 to 15:23. The trial court severed counts nine through sixteen and counts forty-five and forty-seven from the other charges. 3T15:24 to 16:16, 17:21 to 18:7.

---

[3] The Appellate Division describes the various assaults in detail in its direct appeal opinion. *State v. Cepates*, No. A-4079-04T4, 2008 WL 2185216, at *2-3 (N.J. Super. Ct. App. Div. May 28, 2008); *see also* D.E. 8-7 at 6-11.
[4] 1T = Transcript of Motion to Line Up, dated March 10, 2004; D.E. 8-36.
2T = Transcript of Motion to Suppress, dated June 14, 2004; D.E. 8-37.
3T = Transcript of Motion to Sever, dated July 22, 2004; D.E. 8-38.
4T = Transcript of Motion Proceedings, dated August 26, 2004; D.E. 8-39.
5T = Transcript of Motion for Additional Discovery, dated September 30, 2004; D.E. 8-40.
6T = Transcript of Trial Discovery Motion, dated October 12, 2004; D.E. 8-41.
7T = Transcript of Jury Selection, dated October 18, 2004; D.E. 8-42.
8T = Transcript of Trial Proceedings, dated October 18, 2004; D.E. 8-43.
9T = Transcript of Trial Proceedings, dated October 19, 2004; D.E. 8-44.
10T = Transcript of Trial Proceedings, dated October 20, 2004; D.E. 8-45.
11T = Transcript of Trial Proceedings, dated October 21, 2004; D.E. 8-46.
12T = Transcript of Trial Proceedings, dated October 25, 2004; D.E. 8-47.
13T = Transcript of Trial Proceedings, dated October 26, 2004; D.E. 8-48.
14T = Transcript of Trial Proceedings, dated January 24, 2005; D.E. 8-49.
15T = Transcript of Trial Proceedings, dated January 25, 2005; D.E. 8-50.
16T = Transcript of Trial Proceedings, dated January 27, 2005; D.E. 8-51.
17T = Transcript of Trial Proceedings, dated January 31, 2005; D.E. 8-52.
18T = Transcript of Sentence, dated February 4, 2005; D.E. 8-53.
19T = Transcript of Re-Sentence, dated July 3, 2008; D.E. 8-54.
20T = Transcript of Post-Conviction Relief Hearing, dated July 29, 2011; D.E. 8-55.
[5] The two sets of counts related to crimes against two individuals, respectively.

3

The first trial took place in October 2004 ("First Trial"). *See* 7T-13T. "Before the case went to the jury, the State moved to dismiss counts six, seven, thirty, thirty-one, thirty-nine, forty-three and forty-four." State App. Br. at 12. The jury convicted Cepates on counts one through five, twenty through twenty-nine, thirty-four through thirty-eight, and forty through forty-two. *State v. Cepates*, 2008 WL 2185216, at *1 (N.J. Super. Ct. App. Div. May 28, 2008) ("*Cepates I*").

Cepates' second trial, for counts nine through sixteen, took place from January 24, 2005, to January 31, 2005 ("Second Trial"). *See* 14T-17T. Cepates was acquitted of count fourteen but convicted of all other charges. *Cepates I*, at *1.

### B.     Sentencing

The trial court conducted a combined sentencing on February 4, 2005. 18T. At the close of the sentencing, the State moved to dismiss counts eight,[6] seventeen through nineteen,[7] and forty-five to forty-seven.[8] *Cepates I*, at *1 n.2. The trial court also dismissed counts thirty-two and thirty-three.[9] *Id.*; *see also* D.E. 8-5 at 4. "After appropriate mergers, [Cepates] was sentenced on all counts to a total aggregate term of 139 years subject to the No Early Release Act (N.E.R.A.), N.J.S.A. 2C:43-7.2(c), together with monetary penalties and assessments." *Cepates I*, at *1. "This sentence represented seven consecutive terms for the crimes against all [seven] victims . . . ." *Id.*

### C.     Direct Appeal

Cepates timely appealed to the Appellate Division, arguing that (1) the trial court erred in joining the charges in the First Trial, (2) impermissible hearsay was admitted during the Second

---

[6] Charge related to an assault on a victim on September 20, 2001.
[7] Charges related to an October 13, 2001, robbery.
[8] Charges related to attempted aggravated sexual assault on December 6, 2003.
[9] Charges related to an April 17, 2002, robbery.

4

Trial, (3) his sentence was excessive, and (4) his sentence was above the presumptive statutory terms for first- and second-degree crimes based solely on a judicial finding of aggravating factors. *Id.* at *3-4; *see State v. Natale*, 184 N.J. 458, 465 (2005) ("[A] sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction, violates a defendant's Sixth Amendment jury trial guarantee."). The State agreed that Cepates should be resentenced. *Id.* at *7 (citing *Natale*).

The Appellate Division affirmed Cepates' convictions on May 28, 2008, but remanded for resentencing under *Natale*. *Id.* The New Jersey Supreme Court denied certification on September 22, 2008. *State v. Cepates*, 196 N.J. 466 (2008).

### D. Resentencing and Appeal

The trial court resentenced Cepates on July 3, 2008. D.E. 8-11. The court corrected the *Natale* error but otherwise sentenced Cepates to the same sentence. *Id.* Cepates appealed. D.E. 8-12. On February 9, 2010, the Appellate Division affirmed Cepates' sentence. D.E. 8-13. Cepates did not petition for certification. Opp'n at 12.

### E. Post-Conviction Relief Proceedings

Cepates filed his original post-conviction relief ("PCR") petition on February 1, 2009. D.E. 8-17. The PCR court dismissed the petition without prejudice on March 11, 2009, because Cepates' excessive-sentencing appeal was still pending. D.E. 8-18. Cepates filed an amended petition on October 22, 2009, D.E. 8-20, and another petition on March 1, 2010, D.E. 8-21. The PCR court denied Cepates' PCR petition without an evidentiary hearing on July 29, 2011. D.E. 8-26; 20T.

Cepates appealed on December 30, 2011. D.E. 8-27. Appointed counsel filed a brief arguing that Cepates' trial counsel was ineffective for failing to request limiting instructions after

other-crimes evidence was introduced. D.E. 8-28 ("PCR App. Br."). Cepates subsequently filed a *pro se* brief arguing that PCR counsel was ineffective for failing to argue that Cepates' rights under Article 36 of the Vienna Convention on Consular Relations were denied. D.E. 8-29 ("*Pro Se* PCR App. Br."). The Appellate Division rejected both arguments and affirmed the PCR court's decision on March 24, 2014. *Cepates II*, at *4-5. The New Jersey Supreme Court denied certification on October 17, 2014. *State v. Cepates*, 220 N.J. 41 (2014).

## F. Habeas Corpus Proceedings

Cepates filed his original habeas corpus petition on December 5, 2014. D.E. 1. On December 12, 2014, the Honorable Faith S. Hochberg administratively terminated the petition because Cepates had not used the correct form. D.E. 2. Cepates submitted his amended petition ("Amended Petition") on February 3, 2015. Am. Pet. The matter was reassigned to the Honorable Kevin McNulty on August 24, 2020. D.E. 5.

Judge McNulty reopened the matter on October 6, 2020, and ordered Respondents to answer the Amended Petition. D.E. 6. Respondents answered and opposed the Amended Petition on November 10, 2020. Opp'n. Judge McNulty granted Cepates' two requests for extensions to reply while Cepates attempted to obtain discovery and trial transcripts from his prior counsel. D.E.s 10 & 13. Cepates filed two motions asking the Court to order counsel to produce the records, D.E.s 14 & 15, which Judge McNulty denied without prejudice, D.E. 16.

The matter was reassigned to the undersigned on July 7, 2022. D.E. 18. Cepates filed a second motion to compel that same day, D.E. 21, which the Court granted in part, D.E. 23. The Court ordered Respondents to provide Cepates with the answer's exhibits in an accessible format, but denied Cepates' request for transcripts or discovery other than those submitted with the answer. *Id.* at 3.

On May 16, 2023, Cepates sought an extension of time to reply to Respondents' opposition due to difficulties in reviewing the papers, D.E. 25, which the Court granted, D.E. 26. On June 26, 2023, Cepates submitted his reply papers as a Motion to Submit Sur-Reply *Nunc Pro Tunc*. D.E. 27 ("Reply"). Because Cepates' reply was timely, the Court dismissed the motion as moot. D.E. 28.

## II.     LEGAL STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits a federal court to entertain a petition for writ of habeas corpus on behalf of a person in state custody due to a state court's judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This petition

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim [resulted in a decision that was]
>
> (1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable" from a Supreme Court decision and "nevertheless arrives at a [different] result . . . ." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court's decision "is an unreasonable application" of Supreme Court precedent if it "correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 572 U.S. 415, 426 (2014). Essentially, "a state court's ruling must be 'so

7

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The Court must presume that the state court's factual findings are correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even if a petitioner meets AEDPA's "difficult" standard, he must still show that any constitutional error had a "substantial and injurious effect or influence" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022) (internal quotation marks omitted) ("[E]ven a petitioner who prevails under AEDPA must still [] persuade a federal habeas court that law and justice require relief.").

### III. DISCUSSION

#### A. Ground One is Procedurally Defaulted and Exhausted

Cepates argues that his trial counsel was ineffective by failing to move for change of venue or for a foreign jury due to the prejudicial publicity before the First Trial ("Ground One"). Am. Pet. at 20. Respondents argue that Ground One is unexhausted or, in the alternative, procedurally defaulted. Opp'n at 14-20. The Court concludes that Ground One is procedurally defaulted and will dismiss Ground One.

"The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'" *Shinn v. Ramirez*, 142 S. Ct. 1718, 1731 (2022) (quoting *Harrington*, 562 U.S. at 102-03). Before seeking relief in federal court, a state prisoner must "exhaust[] the remedies available" in state court. 28 U.S.C. § 2254(b)(1)(A). "Ordinarily," this is satisfied if the state prisoner "rais[es] his federal claim before the state courts in accordance with state procedures." *Shinn*, 142 S. Ct. at 1732. This means "state prisoners must

give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including a petition for discretionary review before the State's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Cepates raised this ineffective assistance of trial counsel claim in his PCR petition. D.E. 8-22 at 7. During oral argument, PCR counsel acknowledged that the trial court had asked the jury pool about pre-trial publicity. 20T10:7-15. The PCR court denied the claim on the merits, concluding that "defense counsel appropriately represented [Cepates and] appropriately addressed the issue of pre-trial publicity through the process of voir dire"; this was also "bolstered by the trial court's several and extensive limiting instructions regarding media coverage and the effect of that coverage . . . ." 20T33:15-21. Cepates did not appeal this finding to the Appellate Division. *Cepates II*, at *3.

If a petitioner has not fairly presented his claims to the highest state court, he has failed to exhaust those claims. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). However, a claim will be considered exhausted when "procedural rules bar a petitioner from seeking further relief in state courts[] . . . because there is an absence of available State corrective process." *Id.* (internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)). This is the "procedural default" doctrine, which is an "important corollary to the exhaustion requirement" because "to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule." *Shinn*, 142 S. Ct. at 1732 (cleaned up).

Here, Cepates cannot return to the state courts and exhaust Ground One because "[a]n issue not briefed is deemed waived." *State v. Zingis*, 471 N.J. Super. 590, 599 n.4 (N.J. Super. Ct. App.

9

Div. 2022) (internal quotation marks omitted). Ground One is thus considered exhausted under Section 2254(b).

Federal courts may not consider the merits of a procedurally defaulted claim unless the petitioner "establishes cause and prejudice or a fundamental miscarriage of justice to excuse the default." *Lines*, 208 F.3d at 160 (cleaned up). "To establish cause, the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Shinn*, 142 S. Ct. at 1733 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Cepates has not established cause for the default. Cepates states that he "had no opportunity, prior to his first post-conviction proceeding, to obtain either review of his claim or assistance of counsel with respect to that claim . . . ." Reply at 6.[10] He also asserts that "the state trial court in [his] first post-conviction proceeding had no discretion, on any basis, to decline to review the merits of any ineffective-assistance-of-trial counsel claim." *Id.* The second reason cannot be the "cause" of the default because, contrary to Cepates' argument, the PCR court denied Ground One on the merits. 20T33:15-21.

"Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). However, Cepates may not rely on this exception. Cepates submitted a *pro se* brief in the Appellate Division that raised an additional claim, which the Appellate Division reviewed on the merits. *Pro Se* PCR App. Br.; *Cepates II*, at *3. Therefore, the Appellate Division would have reviewed Ground One on the merits if it was included in Cepates' *pro se*

---

[10] Cepates refers to his "first" PCR proceedings in his reply papers. Reply at 6. There is no mention of second or subsequent PCR proceedings in the record before the Court.

brief. As such, PCR counsel did not "cause" the default of Ground One, preventing the Court from reviewing its merits. *See Lines*, 208 F.3d at 160. Accordingly, the Court will dismiss Ground One as procedurally defaulted.

**B. Ground Two is Procedurally Defaulted in Part and is Otherwise Meritless**

Cepates also argues that (1) trial counsel was ineffective for failing to request a limiting instruction after the State presented other-crimes evidence and (2) appellate counsel was ineffective for failing to raise this claim on direct appeal ("Ground Two"). Am. Pet. at 22.

*1. Ineffective assistance of trial counsel*

"The other-crimes evidence in the instant case included victim testimony about five violent and disturbing sexual assaults." PCR App. Br. at 27. Cepates argues that trial counsel should have requested a limiting instruction after each victim testified because "[b]y the time the jury heard the limiting instruction[] at the end of the final charge, they could not forget or erase the visceral feelings they had developed from repeatedly hearing the victims' testimony." *Id.* The Appellate Division denied the ineffective assistance of trial counsel claim on the merits. *Cepates II*, at *4-5.

To succeed on this claim, Cepates must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). He must then show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Furthermore, the "pivotal question" in a section 2254 *Strickland* claim "is whether the state court's application of the *Strickland* standard was unreasonable[, which] is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 562 U.S. at 101. The Court's review is thus "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).

11

The Appellate Division reasonably applied *Strickland* to Cepates' ineffective assistance claim. "*Strickland* specifically commands that a court 'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Id.* at 196 (second alteration in original) (quoting *Strickland*, 466 U.S. at 689-90). The Appellate Division was required "to affirmatively entertain the range of possible reasons [Cepates'] counsel may have had for proceeding as they did." *Id.* (cleaned up).

The Appellate Division found several reasons supporting trial counsel's decision to wait until the final charge for the limiting instruction. First, "[t]he first three victims did not identify [Cepates] as the [assailant]"; "[t]hus, delivery of the [other-crimes charge] after the first three victims testified may have created [an] opposite[, and presumably unwanted,] impression . . . ." *Cepates II*, at *3 (footnote omitted). "Also, defense counsel would have provoked the delivery of interim charges five times in the short span of two consecutive trial days in which the five victims testified[,]" and "the mere repetition of the charge" could have led the jury to conclude that Cepates "had a propensity to commit crimes . . . ." *Id.* "Moreover, the theory of the defense was one of mistaken identification. [Cepates] conceded that the rapes occurred. Even if the jury concluded that one man committed all five assaults, [Cepates] argued he was not the assailant, challenging the reliability of the DNA evidence." *Id.* "Finally, the evidence of the four separate incidents was primarily presented because [Cepates] was charged with crimes related to each." *Id.* Any of these reasons are objectively reasonable under *Strickland*.

Thus, the Appellate Division reasonably applied *Strickland* to Cepates' claim. Accordingly, the Court will deny habeas relief as to this claim in Ground Two.

2. *Ineffective assistance of appellate counsel*

Cepates has procedurally defaulted on Ground Two's claim that his appellate counsel was ineffective for failing to raise the limiting instruction claim on direct appeal. As with Ground One,

12

Cepates raised this claim in his PCR petition, but failed to appeal that decision to the Appellate Division. *See* PCR App. Br. at 2; *Pro Se* PCR App. Br. at 3-9. The claim is therefore exhausted and procedurally defaulted for the same reasons as Ground One, as Cepates fails to demonstrate cause for the default. *See supra* Section III(A). Accordingly, the Court will dismiss the ineffective assistance of appellate counsel claim in Ground Two as procedurally defaulted.

### C. Evidentiary Hearing

"A district court is required to hold an evidentiary hearing only when the petitioner presents a prima facie showing that 'a new hearing would have the potential to advance the petitioner's claim.'" *Porter v. Adm'r of N.J. State Prison*, 2021 WL 2910944, at *4 (3d Cir. July 12, 2021) (quoting *Siehl v. Grace*, 561 F.3d 189, 197 (3d Cir. 2009)). "In other words, th[e] Court must first determine whether the Appellate Division, as the last state court to reach the issue on its merits, issued a decision that was contrary to federal law, an unreasonable application of federal law, or . . . based on an unreasonable determination of the facts." *Murphy v. Att'y Gen. of N.J.*, 2021 WL 3144641, at *4 (D.N.J. July 26, 2021), *reconsideration denied*, 2022 WL 1213354 (D.N.J. Apr. 25, 2022). "If no, the inquiry ends there because [the p]etitioner has not satisfied the [section] 2254(d) standard." *Id.*

Upon review of the parties' papers and other relevant materials, the Court finds that the Appellate Division reasonably applied *Strickland* to Cepates' claim. Accordingly, the Court will deny habeas relief without an evidentiary hearing.

### D. Certificate of Appealability

AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a Section 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2). The Court will deny a certificate of appealability for Ground Two's ineffective assistance of trial counsel claim because no reasonable jurist could find that Cepates substantially showed the denial of a constitutional right.

The Supreme Court held in *Slack v. McDaniel* that "[w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [cause of action] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." 529 U.S. 473, 484 (2000). The Court will deny a certificate of appealability for Ground One and Ground Two's ineffective assistance of counsel claims because jurists of reason would not find it debatable that they are procedurally defaulted.

IV.   **CONCLUSION**

For the reasons stated above, the Court will **DISMISS** Ground One in its entirety and Ground Two's ineffective assistance of appellate counsel claim as **PROCEDURALLY DEFAULTED**. The Court will **DENY** relief under Section 2254 for Ground Two's ineffective assistance of trial counsel claim and will **DENY** Cepates a certificate of appealability. An appropriate Order accompanies this Opinion.

Dated: October 24, 2023

_____
Evelyn Padin, U.S.D.J.